**United States District Court**
**Southern District of Ohio**
**Western Division**

JAMES A. WEMER, NINA E WEMER,
and GARY MUSGUIRE, individually
and on Behalf of a Class of Persons
Similarly Situated,                                  Case No. 1:97-cv-950

    Plaintiffs,                                Judge Weber
vs.                                                  Magistrate Judge Black

THE OHIO NATIONAL LIFE
INSURANCE COMPANY and OHIO
NATIONAL LIFE ASSURANCE
CORPORATION,

    Defendants.

**REPORT AND RECOMMENDATION[1] THAT:**
**(1) DEFENDANTS' MOTION TO ENJOIN (doc. 84) BE GRANTED; AND**
**(2) PLAINTIFFS' MOTION TO DISMISS (doc. 87) BE DENIED**

    This matter is before the Court on a motion by Defendants Ohio National Life Insurance Company and Ohio National Life Assurance Corporation ("Ohio National") to enjoin Dr. Donald L. Johnson and Dr. Stephen Brinley ("Plaintiffs") from violating the Final Judgment entered in this nationwide class action by pursuing their lawsuit against Defendants in Alabama state court. (Doc. 84).  In response to Ohio National's motion, Plaintiffs filed a motion to dismiss Ohio National's motion (docs. 87, 88), to which Ohio National replied (doc. 95).  The Court held oral argument on February 14, 2005.

**BACKGROUND**

    In May 1997, the above-captioned case was filed against Ohio National by James A. Wemer, Nina E. Wemer and Gary Musguire, individually and behalf of a class of persons similarly situated.  (Doc. 1).  The complaint alleged that the individuals and the Class were injured by Ohio National's conduct in connection with life insurance sales practices.  The complaint further alleged fraud, negligent misrepresentation, negligence, breach of contract, breach of fiduciary duty, fraudulent inducement, reformation, unjust enrichment/imposition of constructive trust, and violations of consumer fraud and deceptive trade practices statutes.

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Thereafter, in April 1999, the parties reached a proposed settlement agreement designed to remediate Ohio National policyholders who were injured by Ohio National's sales practices. On April 22, 1999, the Court entered an Order preliminarily approving the Settlement Agreement, and (i) conditionally certifying a Class for settlement purposes only, (ii) directing the forms and methods of Class Notice, and (iii) setting forth procedures by which Class Members could exclude themselves from or object to the terms of the Proposed Settlement. (Doc. 47). Policyholders were fully informed that if they failed to take the steps set forth in the Class Notice to exclude themselves from the Class, and if the Proposed Settlement were approved, they, or anyone on their behalf, would be barred from taking any action against Ohio National related to the sale, solicitation or servicing of their Ohio National policies covered by the Class Settlement.

The Order also approved the content of Class Notice as designed to alert Class Members to the pendency of the Class Action and the Proposed Settlement and to provide the necessary information to afford Class Members the opportunity to make an informed decision as to whether to participate in the Class or exclude themselves. The Notice made clear that if a Class Member did not timely opt out of the Class, the party would remain a Class Member and be bound by the Settlement and by all orders and judgments in the lawsuit. (Doc. 47, Notice of Class Action). The Class Notice also contained a description of the Class Release and made clear that the Settlement covers "most known and unknown claims relating to the Policies involved in the Settlement." (Doc. 47, Notice of Class Action, p. 17).

On August 2, 1999, the Court entered an Order and Final Judgment approving a Class Action Settlement designed to remediate Ohio National policyholders who were injured by Ohio National's sales practices. (Docs. 78, 80). The Order, among other things, certified the Class for settlement purposes, defined the Class Period as commencing January 1, 1981 and terminating May 1, 1997, and provided that all Class Members who did not timely exclude themselves from the Class were permanently barred and enjoined from litigating any and all claims related to the Class Action. Additionally, the Final Judgment expressly reflected this Court's retention of continuing exclusive jurisdiction over all claims relating to enforcement and interpretation of the Settlement Agreement.

**FACTS AND PROCEDURAL HISTORY**

Plaintiffs, both physicians, jointly own Florence M.R.I. Diagnostic Center, P.C. in Florence, Alabama. (Doc. 95, Ex. A, Affidavit of Donald L. Johnson ("Johnson Aff.") at ¶ 2). In 1991, the Plaintiffs entered into a buy/sell trust agreement in connection with their business, with Conrad C. Pitts, Esq. serving as the Trustee. *Id.* In the spring of 1992, Mr. Pitts had several discussions with an Ohio National agent about obtaining additional

insurance polices on the lives of the Plaintiffs for the purpose of funding the buy-out provision under the trust's buy/sell agreement. *Id.* at ¶ 3. Ohio National's agent recommended "10-pay" policies that would build up cash overtime and fund themselves after ten years. *Id.* at ¶ 4. According to Plaintiffs, the agent specifically stated that they would be finished making premium payments in ten years and they would both have five million dollars in coverage to age ninety. *Id.* Based upon these representations, the Plaintiffs purchased two Ohio National life insurance polices in September 1992, and they began paying premiums in November of 1992. The policies supported Plaintiffs' buy/sell trust agreement which governed the transfer of their medical practice in the event one of them died.

Mr. Pitts as Trustee of a buy/sell Trust is the owner of Class Policy C6323997, which insures the life of Dr. Johnson, and Class Policy C6323998, which insures the life of Dr. Brinley. Mr. Pitts is also the policies' beneficiary, and the Plaintiffs are the insureds under the policies.

On or before April 30, 1999, Class Notice was sent to Dr. Johnson and Dr. Brinley, c/o Conrad C. Pitts, regarding Class Policies C6323997 and C6323998. (Doc. 84, Declaration of Karin Brooks "Brooks Decl." ¶ 2). Neither policy C6323997 nor C6323998 was excluded from the Class Action. *Id.*

Ohio National received a CEP[2] election form signed by "Donald L. Johnson, M..D." in which Dr. Johnson elected to pursue relief for Policy C6323997 through the CEP process. *Id.* Although Dr. Johnson was sent a CEP claim form, Ohio National never received an executed claim form for policy C6323997. Accordingly, Ohio National awarded General Relief in favor of policy C6323997. *Id.*

Similarly, Ohio National received a CEP election form signed by "Conrad Pitts, Trustee" and "Dr. Stephen Brinley by Conrad Pitts," in which Mr. Pitts and Dr. Brinley elected to pursue relief for policy C6323998 through the CEP process. *Id.* Although Mr. Pitts and Dr. Brinley were sent a CEP claim form, Ohio National never received an executed claim form for policy C6323998. Accordingly, Ohio National awarded General Relief in favor of policy C6323998. *Id.*

Thereafter, on or about December 12, 2003, Drs. Johnson and Brinley filed an action in the Circuit Court of Jefferson County, Alabama styled, *"Donald L. Johnson and Stephen K. Brinley, Plaintiffs v. Ohio National Life Assurance Corporation; J. Terry Holloway, Defendants,"* Civil Action No. CV-03-7803. (Doc. 84, Declaration of Edward J. Reich

---

[2] "Claim Evaluation Process" or "CEP" is defined as the procedures for the presentation, evaluation and resolution of Claims. (Settlement Agreement, p. 6, ¶ 16).

("Reich Decl.") at Ex.5)). Plaintiffs' complaint alleges fraud and other misconduct in connection with Plaintiffs' purchase in November 1992 of Class Policies C6323997 and C6323998.

According to Plaintiffs, since 2002, Plaintiffs have paid well over $240,000.00 in premiums to keep the policies in effect, despite assertions by Ohio National that the policies would fund themselves after ten years. Moreover, Plaintiffs' understanding of the "10-pay" aspect of their policies was confirmed not only by the initial statements and assurances made by Ohio National's agent, Mr. J. Terry Holloway, at the point-of sale in 1992, but also by his explicit statements and reassurances in 1997 and 2000. In response to specific inquiries made by Plaintiffs about the polices, Mr. Holloway allegedly consistently reaffirmed in 1997 and 2000 that there was nothing wrong with Plaintiffs' policies, and that the policies would require no additional premium payments after November 2002. Plaintiffs' complaint sets forth various causes of actions based on these allegations.

Following the filing of Plaintiffs' complaint, Ohio National's counsel forwarded Plaintiffs' counsel a copy of the Final Judgment entered in the Class Action. (Doc. 84, Declaration of Robert W. Bradford, Jr. ("Bradford Decl.") at Ex. 5)). Ohio National's counsel further noted that Plaintiffs' claims were subject to and barred by the Final Judgment and the Class Release, and, therefore, requested that Plaintiffs voluntarily dismiss their action. *Id*. Plaintiffs did not voluntarily dismiss their complaint. *Id.*

On January 28, 2004, Plaintiffs filed a declaratory judgment action in the Circuit Court of Jefferson County, Alabama, styled *Donald L. Johnson and Stephen K. Brinley, Plaintiffs v. Ohio National Life Assurance Corporation; J. Terry Holloway, Defendants,"* Civil Action No. CV-04-0564. (Bradford Decl. ¶ 3). In the second action, Plaintiffs are seeking a declaration by the Alabama state court that their claims asserted in the first complaint are not barred by the Final Judgment and Class Release entered by this Court. On February 20, 2004, Plaintiffs filed a motion to consolidate their two state court actions and to stay the original action pending a determination as to whether their claims are subject to and barred by the Final Judgment. *Id.*

Thereafter, on March 12, 2004, Ohio National filed a motion to dismiss or, in the alternative, to stay the Alabama action, and on October 15, 2004, the Circuit Court of Jefferson County, Alabama stayed the Plaintiffs' litigation pending this Court's further proceedings. (Doc. 95, Ex. 1, Order from Circuit Court of Jefferson County, Alabama).

On September 22, 2004, Ohio National filed the instant motion to enjoin. (Doc. 84). In response, Plaintiffs filed a motion to dismiss Ohio National's motion asserting that they were not properly served with the summons and motion, and that this Court does not have personal jurisdiction over Plaintiffs because they are not, and never were, Class Members.

## DISCUSSION

Ohio National argues that Plaintiffs should be enjoined from violating this Court's Approval Order and Settlement Agreement because Plaintiffs are Class Members, or, in the alternative, Releasing Parties and, therefore, their claims have already been remediated though the Class Settlement.

I. <u>This Court Has Continuing Exclusive Jurisdiction over Plaintiffs' Claims.</u>

The Final Order approving the Class Action, states that:

[T]his Court expressly retains continuing jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Order and the accompanying Final Judgment, and for any other necessary purpose, including without limitation:

    a.    enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order of the Final Judgment (**including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are not barred by this Order and the Final Judgment etc**.);

    b.    entering such additional Order as may be necessary or appropriate to protect or effectuate the Court's Order and the Final Judgment approving the Settlement Agreement, dismissing all claims on the merits, with prejudice and without leave to amend, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and

    c.    entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction.

(Doc. 78, ¶ 19)(*emphasis added*).

It is undisputed that the policies purchased by Plaintiffs are Class Policies that were not excluded from the Class Action, and are, therefore, subject to the provisions contained in the Settlement Agreement. Accordingly, this Court retains jurisdiction to determine whether Plaintiffs are Class Members and/or Releasing Parties and/or whether Plaintiffs' claims are barred by the Settlement Agreement.

II.     Plaintiffs Are Not Class Members As Defined by the Settlement Agreement.

The Final Judgment and the Settlement Agreement define "Class Members" in terms of policy ownership. "Class" and "Class Members" (individually or collectively) are defined as "all persons who are owners of a Policy or Policies," but excludes . . . "any owner of a Policy or Policies who timely excludes himself or herself from Class." *Id*. ¶ 1.

Moreover, the Notice of Class Action contains a "Q & A" [Question and Answer] section for the benefit of potential Class Members, which states in part:

> **If I am the insured or beneficiary of a Policy, but not the owner, am I a potential member of the Class?**
>
> **No.** Only those who have (or had) an *ownership* interest in a Policy covered by the Class definition are members of the Class. Of course, if you are both an owner of a Policy and the insured under the Policy, you are still a member of the Class for that Policy.

(Doc. 88. Ex. H, p. 30) (emphasis added).

Here, the policies at issue were not in fact "owned" by the Plaintiffs, but were "owned" by a trust whose legal title was held by the Plaintiffs' attorney, Mr. Pitts. Thus, while the Plaintiffs were the beneficiaries of the trust, legal title to each of the policies was held by the trustee, Mr. Pitts. Therefore, the Plaintiffs were not "Class Members" as defined by the Final Judgment and the Settlement Agreement.

III.    Plaintiffs Are Releasing Parties and Subject to the Binding Effect of the Settlement Agreement.

Ohio National contends that even if the Plaintiffs are not deemed "Class Members," they are clearly "Releasing Parties" as defined by the Settlement Agreement, and, therefore, subject to the binding effect of the Settlement Agreement. The Court agrees.

Pursuant to the Settlement Agreement, all Class Members who did not exclude themselves from the Class Action, released all claims that have been or could be asserted in

connection with the underlying litigation.  As noted by Ohio National, the Class Release is not limited to Class Members, as it extends to "Releasing Parties."

> "Releasing Parties" means Plaintiffs, individually and on behalf of the Class, all Class Members, and each of their predecessors, beneficiaries, successors, heirs, assigns, agents, employees, attorneys, administrators, executors, and any other person or entity claiming or potentially claiming under or through any of the foregoing.

(Settlement Agreement, ¶ II(A)(57)).

Furthermore, the Settlement Agreement provides that with respect to the Polices as to which Class Members have not excluded themselves from the Class, Plaintiffs and all Class Members agree to a release and waiver, that provides in part:

> The Releasing Parties hereby expressly agree that they shall not now or hereafter institute, maintain or assert against the Released Parties, directly or indirectly, on their own behalf, on the behalf of the Class or any other person, and release and discharge the Released Parties from, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature, whatsoever, whether based on federal, state or local statute or ordinance, regulation, contract, common law, or any other source, that have been, or could have been, may be or could be alleged asserted now or in the future by the Releasing Parties against the Released Parties in the Action or in any other court action.

*Id*. at XII(A)(1).

Plaintiffs argue that they are not "Releasing Parties," because the intent of the Settlement Agreement's reference to beneficiaries of Class Members was to bar any party from asserting a claim "under or through" the Class Member, which they contend they are not doing.  (*See* Doc. 88, p. 9).  Moreover, Plaintiffs maintain that because of the mechanics of trusts, they have an interest in the income from the trust, but not in the trust itself which owns the insurance policies at issue.  Therefore, Plaintiffs maintain that they are not the beneficial owners of the policies, but simply have an equitable interest in the trust which happens to own the policies.  As a result, they argue that they are not included in the definition of "Releasing Parties."  Plaintiff's arguments are unavailing, however.

Here, Plaintiffs are beneficiaries of a Class Member (through the buy/sell trust). Plaintiffs concede that they have a beneficial interest in the trust.  Thus, the plain language of the Settlement Agreement indicates that Plaintiffs, as beneficiaries of a Class Member, are "Releasing Parties," and, therefore, subject to the binding effect of the Settlement

Agreement.[3]

IV. The Anti-Injunction Act and the All-Writs Act Authorize the Court to Enjoin Plaintiffs' State Court Action.

To "ensure the effectiveness and supremacy of federal law," the Anti-Injunction Act, 28 U.S.C. § 2283, specifically authorizes federal courts to guard against relitigation of issues previously resolved through their judgments. *Chick Kam Choo v. Exxon Corp.* 486 U.S. 140, 146 (1988). Under the Anti-Injunction Act, injunctions of state court actions are authorized if "necessary in aid of jurisdiction" or "to protect or effectuate . . . judgments." 28 U.S.C. § 2283. Similarly, the All Writs Act, 28 U.S.C. § 1651, specifically authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Id*.

**A.**

Plaintiffs, however, maintain that even if the Court finds that they are Class Members and/or Releasing Parties, the Court lacks personal jurisdiction over them, even pursuant to the Anti-Injunction Act and the All-Writs Act, because Plaintiffs do not have minimum contacts with Ohio. Plaintiffs' assertions lack merit.

Under both Acts, a federal court acquires personal jurisdiction over anyone (including non-parties) who threaten to relitigate a federal court judgment. *See U.S. v. N.Y. Tel. Co.*, 434 U.S. 159, 172-72 (1977) (under appropriate circumstances, the All-Writs Act extends to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order) (citation omitted); *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2nd Cir. 1985) (All Writs Act applies to non-resident seeking to interfere with a settlement nearing completion); s*ee also Waffenschmidt*

---

[3] As a threshold matter, Plaintiffs maintain the action should be dismissed because Plaintiffs were not properly served with summons and motion pursuant to Rule 4 of the Federal Rules of Civil Procedure. However, because Plaintiffs are Releasing Parties and therefore subject to the Settlement Agreement in this action, the Court retained jurisdiction over their claims, and service of summons was not necessary or proper. As noted by Ohio National in its Reply Memorandum:

> Ohio National is not asserting a "cause of action" against Plaintiffs nor seeking any legal or equitable relief outside the bounds of the Final Judgment. Rather, Ohio National . . . followed the . . . procedure suggested by the United States Supreme Court in seeking to enforce this Court's Final Judgment. *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 31 n. 1 (2002) ("One in petitioners' position may apply to the court that approved a settlement for an injunction requiring dismissal of rival action").

(Doc. 95, p. 10).

*v. MacKay,* 763 F.2d 711, 716 (5th Cir. 1985) (even in Rule 65 context, purposeful interference with a federal court order is sufficient minimum contacts for specific jurisdiction).

Because the Court finds that Plaintiffs are Releasing Parties, they are subject to the binding effect of the Class Settlement and the Court's Final Judgment Order. The claims contained in Plaintiffs' complaint are directly related to, if not identical to, the claims remediated by the Class Settlement, and to allow Plaintiffs to proceed with their action in Alabama state court would clearly frustrate the Class Action Settlement approved by this Court. Accordingly, this Court has the authority, and should exercise its authority, to enjoin Plaintiffs' Alabama state court action pursuant to the Anti-Injunction Act and the All-Writs Act.

**B.**

Plaintiffs further the challenge the Court's jurisdiction by asserting that their claims are not barred by the Settlement Agreement because they arose after the Class Period. Pursuant to the Approval Order and Final Judgment, the Class Period is defined as commencing January 1, 1981 and terminating May 1, 1997. (Doc. 78, ¶ 3 (e)). Plaintiffs allege that, in 2000, the Ohio National agent made independent fraudulent misrepresentations that they would no longer have to pay out-of-pocket premiums after November of 2002. Plaintiffs have filed an amended and restated complaint in the original Alabama action alleging separate and specific causes of action based upon the alleged 2000 fraud. Therefore, Plaintiffs maintain that they are not attempting to re-litigate the issues remediated in the Final Judgment, but that they are asserting independent claims that arose after the class period.[4]

The Approval Order expressly provides that the Release does not prohibit:

> [C]laim[s] wholly independent from, and not related to, the Released Transactions, or that independently arise from acts, facts or circumstances arising after the Class Period, <u>provided</u>, <u>however</u>, that this provision shall not entitle a Class Member to assert claims which relate to the allegations contained in the Action to any matter described and released above.

---

[4] Plaintiffs further assert that, under Alabama law, a fraud claim in a vanishing premium insurance case is not ripe for adjudication until after the date on which out-of-pocket premium payments were to vanish. *Williamson v. Indianapolis Life Ins. Co.*, 741 So.2d 1057, 1061 (Ala. 1999). Thus, Plaintiffs maintain that under the rule in *Williamson*, their fraud claims were not ripe for adjudication until after November 2002 when the policies were promised to sustain themselves. However, as Releasing Parties, Plaintiffs have waived and released any and all claims relating to vanishing premiums. Moreover, the Approval Order expressly provides that such claims made under state law are knowingly and voluntarily waived and relinquished by the Releasing Parties. (Doc. 78, ¶ 13 (f)).

*Id.* at ¶ 13 (c).

Moreover, the Waiver and Release contained in the Approval Order, "forever discharges the Released Parties from any claims or liabilities arising from or related to the Released Transactions."[5] The Release further states that Releasing Parties expressly agree that they "will not now or hereafter institute, maintain or assert against the Released Parties . . . any and all causes of action . . . connected with, arising out of, or related to . . . the vanishing premium concept and/or the quick pay concept." *Id*. at ¶ 13(a)(2)(b).

The Court is not persuaded that Plaintiffs' claims contained in their amended complaint are wholly "independent" from claims that relate to the Settlement Agreement. Plaintiffs' claims arise out of "vanishing premium" misrepresentations originally made in 1992, and which were allegedly repeated in 1997 and 2000. As noted above, these claims directly relate to the Class Action and were expressly released pursuant to the Settlement Agreement. Thus, as Releasing Parties, Plaintiffs released all known, unknown, and future claims against Ohio National.

Plaintiffs' "vanishing premium" claims for their Class Policies have been remediated in the Class Action, and Plaintiffs' Policies were awarded General Relief from the Settlement Agreement. As noted by Defendants, Plaintiffs should not be permitted to recover twice for the same alleged wrongdoing by donning different hats in different forums. *In re Van Dresser Corp*., 128 F.3d 945, 948 (6th Cir. 1997). Thus, the Court finds that Plaintiffs' claims are not independent from the claims remediated by the Settlement Agreement, and that Plaintiffs' Alabama state court action is an attempt to relitigate issues previously resolved by this Court's Approval Order and Final Judgment. Accordingly, jurisdiction is properly conferred, and Plaintiffs' state court action is properly enjoined pursuant to the Anti-Injunction Act and the All-Writs Act.

---

[5] Released Transactions are defined by the Approval Order as "marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, servicing, or replacement . . . of Policies, or any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Policies, including without limitation, the matters described in Release." (Settlement Agreement, p. 14, ¶ 56).

## CONCLUSION

If the Plaintiffs were permitted to relitigate the same issues put to rest by the Settlement Agreement and Final Judgment, Ohio National would lose the finality properly bargained for in the settlement. Thus, without being able to bind those with interests that derive from the interests of the Class Members, the main objective of the class action settlement would be frustrated.

Accordingly, **IT IS THEREFORE RECOMMENDED THAT** Defendants' motion to enjoin Plaintiffs from violating the Final Judgment (doc. 84) be **GRANTED**, and Plaintiffs' motion to dismiss (doc. 87) be **DENIED**.

.

Date: March 16, 2005             s/ Timothy S. Black
                                 Timothy S. Black
                                 United States Magistrate Judge

**United States District Court**
**Southern District of Ohio**
**Western Division**

JAMES A. WEMER, NINA E WEMER,
and GARY MUSGUIRE, individually
and on Behalf of a Class of Persons
Similarly Situated,                                          Case No. 1:97-cv-950

      Plaintiffs,                                          Judge Weber
vs.                                                                   Magistrate Judge Black

THE OHIO NATIONAL LIFE
INSURANCE COMPANY and OHIO
NATIONAL LIFE ASSURANCE
CORPORATION,

      Defendants.

## NOTICE

      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **TEN (10) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).